**CAMINITI AND IATAROLA, LIMITED,**
Plaintiff–Appellant,

v.

**BEHNKE WAREHOUSING,
INCORPORATED, Defendant–Appellee.**

No. 91–1506.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 5, 1991.

Decided May 6, 1992.

Neal C. Zazove (argued) and Michael J. Progar, Zazove & Progar, Chicago, Ill., for plaintiff-appellant.

George F. Galland, Jr. and Mark S. Kende (argued), Davis, Miner, Barnhill & Galland, Chicago, Ill., for defendant-appellee.

Before CUDAHY, POSNER and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

Caminiti and Iatarola, Ltd. ("C & I") appeals the district court's determination that this action should be stayed pursuant to the *Colorado River* doctrine until the substantially parallel proceeding in a Michigan probate court is concluded. We affirm.

## I. FACTS

Carl Behnke, a wealthy Michigan businessman, died on December 31, 1988. Soon thereafter his will was admitted to the probate court for Calhoun County, Battle Creek, Michigan. Behnke's grandsons, Mac R. Behnke and Mark Behnke, were appointed as the "co-independent personal representatives" of the estate (Michigan term for executors). On February 20, 1989, Mac R. Behnke and Mark Behnke, in their capacity as co-independent personal representatives of the estate, entered into a written contract with C & I, a Chicago law firm whose attorneys all have accounting degrees, to probate the estate and prepare the requisite state and federal income and inheritance tax forms.

In reviewing the assets of the estate, C & I discovered that Carl Behnke and his three children each owned twenty-five percent of a business operating under the name of Behnke Warehousing, Inc. ("BWI"). Although BWI was incorporated in December 1975, it never filed corporate annual reports or corporate state or federal tax returns. Under Michigan law, BWI's failure to conduct itself as a corporation precluded it from being a legal corporate entity. C & I asserts that in order to ascertain the estate's tax liability, it was required to determine whether BWI was a *de facto* corporation under Michigan law and, if so, whether the corporate status could be disregarded for tax purposes. C & I asserts that after its determination that BWI's corporate status could not be ignored, Mac R. Behnke, one of the co-independent personal representatives of the estate, who is also the resident agent and general manager for BWI, entered into a separate oral contract with C & I to represent the corporation. C & I alleges that it expended immense amounts of time and effort in preparing the financial records necessary to restructure BWI as a legal corporation under the oral contract with Mac R. Behnke. To date C & I has received some $400,000.00 in attorneys'

fees from the estate and BWI, much of which was billed directly to and paid by BWI. This lawsuit is an effort of C & I to collect an additional $59,670.85 in legal fees from BWI.

The Behnkes' version of C & I's resurrection of BWI as a legal corporate entity is markedly different from that of C & I. According to BWI, all of C & I's efforts in restructuring the corporate history was a service performed for the estate pursuant to the written contract. BWI contends that C & I recommended bringing the corporate entity back to life in an effort to lower the estate's taxes. The tax benefit would be gained by treating over $1,000,-000.00 of real estate assets of the estate as being held in a trust for BWI.[1]

As part of its duties in representing the estate, C & I was responsible to prepare federal estate tax Form 706, which was due to be filed by April 1, 1990. The Behnkes claim that at a meeting with C & I on March 23, 1990, the co-independent personal representatives of the estate requested the completed Form 706 or the information necessary to finish it. They assert that C & I said the form was not nearly completed, that C & I required an additional $50,-000.00 retainer in order to finish its work on the form, and that the strategy they were pursuing with the estate taxes would require litigation with the IRS, but that C & I did not handle litigation. The Behnkes maintain that they fired C & I as a result of the failure to complete Form 706, the unreasonable attorneys' fees they were charging and what the Behnkes perceived as an admission that C & I was incompetent to handle the case. In contrast, C & I avows that at the March 23, 1990 meeting, it presented the requested work papers to the Behnkes for their inspection and later mailed a summary of them to Mac R. Behnke. C & I contends that it informed the Behnkes that BWI owed the law firm over $51,000.00 for services rendered, and that Mac R. Behnke stated that payment in the full amount would be forthcoming

---

1. Since the estate owned only twenty-five percent of BWI, every dollar that could be shifted from the estate to BWI would reduce the amount of the estate's taxable assets by seventy-five percent of that amount.

shortly. The law firm further avers that the reason there was going to be trouble with the IRS over taxes was because of two million dollars that had somehow been removed from BWI's operating account and certificates of deposit. C & I appears to imply that it was fired because of bringing the two-million-dollar discrepancy to BWI's attention.

C & I filed this diversity suit for legal fees in the Northern District of Illinois on July 3, 1990. One week later C & I filed a claim for attorneys' fees in the Michigan probate court. In its answer to the complaint filed in the U.S. District Court for the Northern District of Illinois, BWI raised an affirmative defense denying that it had a contract with C & I for legal services and asserting that all legal services rendered were performed on behalf of the estate pursuant to the written contract with the estate. On November 2, 1990, the estate filed a petition for repayment of attorneys' fees with the Michigan probate court to recover all the attorneys' fees paid to C & I by the estate as well as BWI on the ground that C & I provided no beneficial services. The petition for return of attorneys' fees in the Michigan probate court alleged that the funds BWI paid to C & I were payments on behalf of the estate and that "much, if not all, of the activities undertaken by [C & I] related to preparation and approval of the Federal Estate Tax Form 706," which, despite charging over $400,000.00 in attorneys' fees, C & I had failed to complete. BWI filed a motion in the federal lawsuit on November 26, 1990, to dismiss the suit on *forum non conveniens* grounds or for a stay on the basis of the *Colorado River* doctrine. The district court denied the request for dismissal on *forum non conveniens* grounds,[2] but ruled that the suits were parallel and granted a stay under the *Colorado River* doctrine pending the outcome of the fee litigation in the Michigan probate court.

The only issue on appeal is whether the district court abused its discretion in staying the federal suit under the *Colorado River* doctrine until the conclusion of the attorney fee litigation in the Michigan probate court.

## II. DISCUSSION

Under the doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976), a federal court may stay or dismiss a suit in exceptional circumstances when there is a concurrent state proceeding and the stay or dismissal would promote "wise judicial administration." Our initial step in determining whether the *Colorado River* doctrine is applicable is to inquire whether the concurrent state and federal proceedings are parallel. It is important to note that "the requirement is of parallel suits, not identical suits. *A 'suit is "parallel" when substantially the same parties are contemporaneously litigating substantially the same issues in another forum....'"* *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir.1988) (quoting *Calvert Fire Ins. Co. v. American Mutual Reinsurance Co.*, 600 F.2d 1228, 1229 n. 1 (7th Cir.1979)) (emphasis added).

The parties to the state and federal suits at issue are admittedly somewhat different. The Michigan probate legal fee dispute is between the Behnke estate and C & I, while the federal suit has been brought by C & I against Behnke Warehouse, Inc. Nonetheless, even though BWI and the estate are separate parties, their interests in the dispute over the legal fees are nearly identical. The estate has an interest in the issue of whether BWI owes legal fees to C & I because the estate owns one-fourth of BWI. BWI has an interest in the dispute over whether the estate owes C & I legal fees or C & I owes the estate a refund of legal fees, for BWI provided the funds for a significant amount of the fees that were paid allegedly on behalf of the estate, and (BWI claims) the estate will eventually need to reimburse BWI for

---

**2.** BWI has not cross-appealed the district judge's denial of its motion for dismissal on the basis of *forum non conveniens.*

those fees. Since the interests of BWI and the estate are so similar, the suits involve "substantially the same parties." The issues in the state and federal proceedings are likewise substantially the same despite the additional issue in the federal case of whether BWI entered into an oral contract for legal services with C & I. The basic issue that must be decided in either court is whether C & I performed any legal services for BWI separate and distinct from those it performed for the estate. If the answer is no, C & I's claim for fees from BWI is moot. The slight difference in the parties and issues in the federal and state cases is insufficient to destroy the parallel nature of the two proceedings in this case, as the granting of the relief BWI has requested in the probate court would dispose of all claims raised in the federal case. We hold that the district court properly concluded that the state and federal proceedings were parallel.

After determining that the state and federal proceedings are substantially similar, our next step is to review the district court's balancing of the factors supporting or disfavoring a stay.

"[T]here are at least ten factors that a district court can consider in deciding whether 'exceptional circumstances' exist that would justify deference to the state courts under the *Colorado River* doctrine.... 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim."

*LaDuke v. Burlington N.R.R.*, 879 F.2d 1556, 1559 (7th Cir.1989) (citations omitted).

"No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. at 1247. "We review the district court's [imposition of a stay] for abuse of discretion." *Schneider Nat'l. Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir.1990).

The factor of whether the state has taken jurisdiction over property does not affect the balance in this case, since one of the basic issues that must be decided regardless of which court addresses it is whether the attorneys' fees at issue relate to the property of the estate or that of BWI. The factor of an inconvenient forum weighs slightly in favor of a stay because C & I is already before the Michigan probate court as a result of voluntarily initiating a proceeding there (July 10, 1990 request for legal fees from estate), whereas if the action in the Illinois district court were to proceed, BWI would be forced to bring its witnesses and documentation from Michigan to a federal forum in Chicago that it has not voluntarily chosen.

The desirability of avoiding piecemeal litigation is the factor weighing most heavily in favor of a stay. As noted above, in order to determine whether BWI owes additional attorneys' fees to C & I, the district court would be required to assess whether C & I performed any legal services specifically for BWI as opposed to the estate; in order for the probate court to determine whether C & I owes a refund of attorneys' fees to the estate, it likewise must determine for whom the legal services were performed. Thus, allowing both cases to proceed would result in duplicative and wasteful litigation with the potential of inconsistent resolutions of the issue.[3] Furthermore, "[i]n analyzing whether a dismissal or stay will further the interest in avoiding piece-meal litigation, we look not for formal symmetry between the two ac-

---

**3.** While "the mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction," *Colorado River*, 424 U.S. at 816, 96 S.Ct. at 1245, in this case there are additional elements favoring a stay.

tions, but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 695 (7th Cir.1985). If there is merit to BWI's claim that all legal services were provided on behalf of the estate alone, there is not only "substantial likelihood that the state litigation will dispose of all claims presented in the federal case," but virtual certainty.

The fourth factor, the order in which the courts obtained jurisdiction, does not weigh heavily in either direction.[4] C & I filed its suit against BWI in the Northern District of Illinois one week prior to filing its request for additional attorneys' fees from the estate in the Michigan probate court, and the estate did not file its petition for a return of attorneys' fees until some four months later. As the Supreme Court noted in *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1, 21, 103 S.Ct. 927, 940, 74 L.Ed.2d 765 (1983), the priority element,

> "as with the other *Colorado River* factors, is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand. Thus, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."

As we demonstrate under factor seven, the state proceeding has progressed further than the federal. Thus, the four-month difference in the time of filing the two claims is of little consequence in this case and fails to cause the priority factor to weigh heavily in the analysis. It is clear that factor five weighs in favor of the district court's stay, for state law will govern the outcome of this suit (C & I does not dispute the district court's finding that Michigan law was controlling). Factor six

does not militate against a stay, for under the circumstances of this case, the federal plaintiff's rights (C & I's) will be adequately protected. If the Michigan probate court determines that C & I performed legal services separately from those on behalf of the estate, but does not determine the amount of fees owed to C & I, the appellant may then proceed to litigate the remaining issue in the district court. C & I has failed to point to any prejudice it might incur under this scenario. The relative progress of the state and federal proceedings (factor seven) also supports the district court's stay. As the district court noted, the federal action has progressed only to the point of ruling on the defendant's motion to stay or dismiss the case; in contrast, at the time the district court entered its stay on February 22, 1991, the state court had set a cut-off date for discovery and scheduled mediation for April 1991. Thus, the controversy appeared to be closer to a resolution in the state proceedings than in the federal.[5]

The only element weighing slightly against a stay is number eight, the presence or absence of concurrent jurisdiction. It is undisputed that Michigan law does not grant the probate court authority to award C & I attorneys' fees from BWI, since BWI is not a party before the probate court.[6] But it is just as clear that the probate court has jurisdiction to determine whether C & I performed any legal services for BWI separate from the estate, for the estate is seeking a refund of all legal fees paid to C & I from the estate or BWI. Hence, there is concurrent jurisdiction for the underlying issue of who received legal services from C & I. At oral argument on appeal, C & I contended that we cannot affirm the district court's stay unless the Michigan probate court has jurisdiction over the claim of attorneys' fees from BWI. But concurrent

---

**4.** The district court found that this factor weighed in favor of a stay because the Michigan probate proceedings began nearly a year and one-half prior to the filing of the federal lawsuit.

**5.** The probate court subsequently granted an extension of time for discovery and delayed mediation until September 1991, but the state

proceeding remains further along in the trial process than the federal one.

**6.** BWI's offer to stipulate that it would not object to the probate court's resolution of C & I's claim for legal fees under an oral contract is immaterial. Parties cannot stipulate subject matter jurisdiction.

jurisdiction is merely one of ten factors to consider, and as we noted above, no single factor is dispositive in itself. Since the probate court's determination of whether C & I performed legal services for BWI separate from the estate may be dispositive of C & I's federal claim, the lack of the Michigan probate court's jurisdiction over C & I's oral contract claim against BWI does not weigh heavily against the district court's stay. Finally, factors nine and ten neither support nor disfavor a stay: There is no possibility of removal, since federal courts do not have jurisdiction over probate matters, *Georges v. Glick*, 856 F.2d 971 (7th Cir.1988), and the Michigan probate court's lack of jurisdiction over C & I's claim for attorneys' fees from BWI precludes us from finding C & I's federal suit to be vexatious or contrived.[7]

Since the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, the source of governing law, the adequacy of state-court action to protect the federal plaintiff's rights, and the relative progress of state and federal proceedings weigh in favor of a stay, and only the lack of the probate court's jurisdiction over C & I's oral contract claim weighs against the stay, we hold that the district court did not abuse its discretion in granting the stay. We hold that the state and federal proceedings at issue are parallel because of the substantial similarity of the parties and issues involved. Since we refuse to hold that the district judge abused his discretion in finding that the relevant factors weighed more heavily in favor of rather than against a stay, the judgment of the district court is

AFFIRMED.

---

7. The district court mistakenly believed that BWI was a party in the Michigan probate proceeding, and thus found that the federal suit was vexatious or contrived. This error is insufficient to persuade us that the court's imposition of a stay was an abuse of discretion.