**Laurie BEMBENEK, Plaintiff,**

v.

**Robert DONOHOO, Monty Lutz, and Diane Hanson, Defendants.**

No. 04C0002.

United States District Court, E.D. Wisconsin.

Jan. 28, 2005.

944

Mary Woehrer, Milwaukee, WI, for Plaintiff.

Phillip Ferris, Corey Finkelmeyer, Madison, WI, for Defendants.

## DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff Laurie Bembenek brings this action for damages under 42 U.S.C. § 1983 alleging that Milwaukee County Deputy District Attorney Robert D. Donohoo, state crime lab firearms identification examiner Monty Lutz and micro-serology analyst Diane Hanson, in their individual capacities, violated her right to due process in connection with a homicide case in which she was the defendant.[1] Defendants move to dismiss arguing that plaintiff's claims are barred because: (1) her 1992 conviction of second-degree murder has not been invalidated; (2) defendants are absolutely immune from suit; and (3) the statute of limitations expired before plaintiff filed suit. Alternatively, defendants ask that plaintiff's action be stayed pending resolution of state court proceedings involving plaintiff.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff's allegations are in some respects frustratingly unclear. However, taking her claims in the light most favorable to her, she appears to allege something along the following lines: in the early 1980s, the Milwaukee County District Attorney's office charged her with the first-degree murder of Christine Schultz. In March 1982, a jury found her guilty of the charge, and the court sentenced her to life in prison. Prior to trial, defendant Lutz supervised ballistics tests which indicated that the murder bullet was consistent with bullets test fired from the on-duty gun of the victim's ex-husband, police officer Elfred Schultz, a gun that at trial

---

1. Regarding plaintiff's homicide conviction, see *State v. Bembenek*, 111 Wis.2d 617, 331 N.W.2d 616, (Ct.App.1983); *see also State v.* *Bembenek*, 140 Wis.2d 248, 409 N.W.2d 432 (1987).

was not connected to plaintiff. Lutz also supervised the preparation of notes memorializing these exculpatory test results. However, neither Lutz nor anyone else made the ballistics evidence or the notes available to plaintiff's counsel. Moreover, at trial, Lutz made no mention of his exculpatory findings but, rather, testified to a ballistics match between the murder bullets and bullets from Elfred Schultz's off-duty gun, a gun that at trial was connected to plaintiff. In the mid–1980's Lutz destroyed the exculpatory ballistics evidence and did not notify plaintiff that he had done so.

At some point, defendant Donohoo became aware that Lutz had destroyed such evidence. Nevertheless, he misrepresented to plaintiff that the state possessed ballistics evidence that incriminated her.

Prior to trial, Hanson performed tests on specimens received from the victim's body. These specimens indicated that the victim had engaged in sexual intercourse shortly before her death. As a result, Hanson listed the murder as a homicide/sexual assault. However, in reporting her findings, Hanson did not disclose the evidence of the victim's recent sexual intercourse or that she had listed the case as a homicide/sexual assault. Hanson's failure to report the evidence relating to recent sexual conduct caused Dr. Elaine Samuels, the county medical examiner, to incriminate plaintiff in her testimony at plaintiff's preliminary hearing. Had Samuels known of Hanson's findings, she would have testified that the murderer was a male.

Sometime subsequent to her trial, plaintiff employed a private investigator, Ira Robins, to investigate the case. Robins's investigative efforts led five forensic pathologists to conclude that the gun introduced as the murder weapon at plaintiff's trial, Elfred Schultz's off-duty gun, was not the murder weapon. In 1991, based on the petition of Robins and the county medical examiner, a Milwaukee County Circuit Court judge commenced a John Doe proceeding to ascertain whether law enforcement officials or others committed crimes in connection with their handling of the investigation into Schultz's death. In 1992, the John Doe special prosecutor concluded that law enforcement officials made mistakes in handling the evidence used to convict plaintiff but did not commit a crime.

Subsequent to the John Doe proceeding, plaintiff's then-attorney, Sheldon Zenner, entered into negotiations with Donohoo concerning plaintiff's case. As a condition of negotiating with Zenner, Donohoo insisted that Robins not be involved in the case and, as a result, Zenner fired Robins. In addition, although he knew that the state possessed no ballistics evidence connecting plaintiff to the crime, Donohoo continued to misrepresent to plaintiff that the state retained the ballistics evidence used to convict her, and that it placed the murder weapon, the off-duty gun of Elfred Schultz, in her hands.

In December 1992, pursuant to Zenner's negotiations with Donohoo, the Milwaukee County Circuit Court vacated plaintiff's first-degree murder conviction, and plaintiff pleaded no-contest to the second-degree murder of Schultz and was immediately released from prison. Plaintiff pleaded no-contest to the charge because defendants Lutz and Hanson failed to disclose exculpatory evidence and because Donohoo misrepresented that the state possessed incriminating ballistics evidence.

In 2002, pursuant to newly enacted Wis. Stat. § 974.07, plaintiff filed a motion in Milwaukee County Circuit Court seeking release of evidence for the purpose of DNA testing and exoneration of the Schultz murder. In January 2003, during a hearing on the motion, plaintiff learned that Lutz had destroyed the test-fired bul-

lets creating the alleged ballistic match with the gun used to convict her and that as a result, Donohoo's representations to her that the state possessed ballistics evidence were false. Plaintiff also discovered that Hanson had found exculpatory evidence but not made it available. In May 2003, the state crime lab conducted a new ballistics examination and found no match between the bullets fired from the off-duty gun used to convict plaintiff and the bullet retrieved from the body of the victim.

As a result of defendants' failures to disclose, wrongful acts and misrepresentations, plaintiff suffered damages by being denied access to exculpatory evidence and wrongfully convicted of the Schultz murder.

## II. MOTION TO DISMISS STANDARD

■ Defendants make a motion which they characterize as a motion to dismiss under Rule 12(b)(6). However, before filing the motion defendants filed an answer to plaintiff's complaint. Rule 12(b)(6) motions filed after an answer are construed as motions for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). *See Warzon v. Drew,* 60 F.3d 1234, 1237 (7th Cir. 1995). However, like a Rule 12(b)(6) motion, a court may grant a motion under Rule 12(c) only if the plaintiff can prove no set of facts that would entitle her to relief. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend,* 163 F.3d 449, 453 (7th Cir.1998) (citing *Gen. Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir.1997)). The essence of the motion is not that the plaintiff has pleaded insufficient facts; it is that, even assuming all of her facts are accurate, she has no legal claim. *Payton v. Rush–Presbyterian–St. Luke's Med. Ctr.,* 184 F.3d 623, 627 (7th Cir.1999). In considering the motion,

the court must assume that all facts alleged in the complaint are true, and construe those facts and all reasonable inferences flowing from them in the light most favorable to the plaintiff. *Bethlehem Steel Corp. v. Bush,* 918 F.2d 1323, 1326 (7th Cir.1990). Attachments to the complaint become a part of the complaint, and the court may consider those documents in ruling on the motion. *Witzke v. Femal,* 376 F.3d 744, 749 (7th Cir.2004). Further, in resolving a motion challenging the sufficiency of a complaint, I am entitled to take judicial notice of matters in the public record. *Palay v. United States,* 349 F.3d 418, 425 n. 5 (7th Cir.2003).

## III. DISCUSSION OF MOTION TO DISMISS

In order to prove a violation of § 1983, plaintiff must show that defendants deprived her of a federal constitutional right while acting under the color of state law. *Reed v. City of Chicago,* 77 F.3d 1049, 1051 (7th Cir.1996). In their motion, defendants do not argue that plaintiff's allegations, if true, do not constitute a violation of due process and do not dispute that they were acting under color of state law. However, as stated, they contend that plaintiff's claims are barred on other grounds. I now turn to their contentions.

### A. Favorable Termination Requirement

■ Defendants argue that plaintiff's claims are barred by *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), because her 1992 second-degree murder conviction has not been invalidated. In *Heck,* a five member majority of the Supreme Court held that a § 1983 suit that would impugn a state conviction or sentence is not cognizable until the conviction or sentence has been invalidated.[2] The Court held:

---

**2.** Both parties assume that plaintiff could not recover damages without impugning her state

in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Id.* at 486–87, 114 S.Ct. 2364 (footnote omitted).

In footnote 10 of *Heck*, the majority opined that this "favorable termination" requirement applied even to § 1983 plaintiffs to whom other federal avenues for challenging their convictions, such as a petition for habeas corpus, were unavailable: "We think the principle barring collateral attacks—a longstanding and deeply rooted feature of both the common law and our own jurisprudence—is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." 512 U.S. at 490 n. 10, 114 S.Ct. 2364. I will refer to this principle as *"Heck–10,"* to distinguish it from the general favorable termination requirement that *Heck* established. Bruce Ellis Fein, *Heck v. Humphrey after Spencer v. Kemna,* 28 New Eng. J. on Crim. & Civ. Confinement 1, 3–4 (2002). Justice Souter, concurring in the judgment and joined by three Justices (Blackmun, Stevens and O'Connor), argued that favorable termination should be required only of persons who are not barred from bringing petitions for habeas corpus (hereinafter the "Souter principle"). His reasons were twofold: habeas and § 1983 collide only where both are available, and the effect of *Heck–10* would be to needlessly deny a federal right of action to persons who had valid claims. *Id.* at 4.

In *Spencer v. Kemna,* 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), the Court, in an 8–1 vote, denied relief in a habeas case in which the petitioner challenged the revocation of his parole but did not do so until after he had served his sentence and been released. With respect to an argument of the petitioner relating to *Heck–10*, Justice Souter again concurred, this time joined by Justices O'Connor, Ginsburg and Breyer, stating *"Heck did not hold that a released prisoner in [petitioner's] circumstances is out of court on a § 1983 claim, and for reasons explained in my Heck concurrence, it would be unsound to read either Heck or the habeas statute as requiring any such result." Id.* at 19. Justice Ginsburg, who had joined the *Heck* majority, concurred separately stating that since the *Heck* decision she had changed her mind and now agreed with Justice Souter. Justice Stevens, dissenting, also endorsed the Souter principle. Thus, although five Justices had earlier subscribed to *Heck–10*, in *Spencer* five Justices renounced it.

Thus, the question arises as to what rule a court should apply when faced with a § 1983 damages action that implicates the validity of the plaintiff's prior conviction but where the plaintiff may not bring a federal habeas petition because she has completed her sentence. The present case raises such question because plaintiff cannot challenge her conviction via habeas corpus because she is not in custody. *See* 28 U.S.C. § 2254(a). For the reasons explained below, I conclude that I should follow the Souter principle rather than that of *Heck–10*. First, both *Heck–10* and the Souter principle are dicta, Fein, *supra,* at 13–25, i.e., statements "in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding—that, being periph-

court conviction.

eral, may not have received the full and careful consideration of the court that uttered it." *Sarnoff v. Am. Home Prods. Corp.*, 798 F.2d 1075, 1084 (7th Cir.1986). I am bound by the considered dicta of the Supreme Court, *see, e.g., McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 19 (1st Cir. 1991), and to the extent that Supreme Court cases contain conflicting dicta, a later dictum supercedes an earlier one just as a later statute supercedes an earlier one. *See, e.g., United States v. Yuginovich*, 256 U.S. 450, 463, 41 S.Ct. 551, 65 L.Ed. 1043 (1921); Fein, *supra*, at 7–8.

Second, the Seventh Circuit has indicated that it is likely that it will apply the Souter principle rather than *Heck–10*. In *DeWalt v. Carter*, 224 F.3d 607 (2000), the court indicated that it adopted the reasoning of the Second Circuit's decision in *Jenkins v. Haubert*, 179 F.3d 19 (2d Cir.1999), which was based largely on the fact that in *Spencer* five Supreme Court justices endorsed the Souter principle. The Court stated:

> Furthermore, we, like the Second Circuit in *Jenkins*, are hesitant to apply the *Heck* rule in such a way as would contravene the pronouncement of five sitting Justices. The concurring and dissenting opinions in *Spencer* reveal that five Justices now hold the view that a § 1983 action must be available to challenge constitutional wrongs where federal habeas is not available.... Individuals without recourse to the habeas statute because they are not in custody (people merely fined or whose sentences have been fully served, for example) fit within § 1983's broad reach.

*DeWalt*, 224 F.3d at 616–17 (citations and quotation marks omitted); *see also Hoard v. Reddy*, 175 F.3d 531, 533 (7th Cir.1999) (stating that there is probably an exception to the rule of *Heck* for cases in which no route other than a damages action under § 1983 is open to the person to challenge her conviction); *Carr v. O'Leary*, 167 F.3d 1124, 1127 (7th Cir.1999) (stating that it would be unreasonable to relieve the defendants of their waiver of *Heck* in light of the *Spencer* dictum that casts doubt on the applicability of *Heck* to cases where habeas is not an available remedy).

For the foregoing reasons, I cannot conclude that *Heck–10* bars plaintiff's § 1983 action. Therefore, defendants' motion for judgment on the pleadings on this ground will be denied.

## B. Absolute Immunity

### 1. General Principles

 Defendants also argue that they are entitled to judgment based on absolute immunity.[3] The text of § 1983 does not provide that any persons are immune from suit. However, the Supreme Court has attributed to the Congress that passed § 1983 knowledge of then-existing common law immunities and has interpreted the lack of explicit abrogation of such immunities as manifesting an intent to preserve them. *Milstein v. Cooley*, 257 F.3d 1004, 1007 (9th Cir.2001). The Supreme Court recognizes two types of immunity to § 1983 actions, absolute and qualified. Absolute immunity is a complete defense to liability. However, "absolute immunity from civil liability for damages is of a 'rare and exceptional character,'" *Auriemma v. Montgomery*, 860 F.2d 273, 275 (7th Cir. 1988) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 202, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985)), and there is a presumption against granting government officials absolute immunity. *Houston v. Partee*, 978 F.2d 362, 367 (7th Cir.1992). Public officials seeking absolute immunity bear the burden of showing that overriding considerations of public policy require that they

---

**3.** Defendants do not make a qualified immunity argument.

be exempt from personal liability for alleged unlawful conduct. *Auriemma*, 860 F.2d at 275 (citing *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988); *Butz v. Economou*, 438 U.S. 478, 506, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)). To determine whether public policy requires that the action of a public official be absolutely immune from suit, the Supreme Court has adopted an approach that focuses on "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (quoting *Forrester*, 484 U.S. at 229, 108 S.Ct. 538). With these general principles in mind, I turn to the issues raised by defendants' claims of absolute immunity.

## 2. Donohoo

The purposes of immunizing a prosecutor from suit are the same as those that underlie the immunity of judges and grand jurors acting within the scope of their duties. *Milstein*, 257 F.3d 1004 (citing *Burns v. Reed*, 500 U.S. 478, 485, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991); *Imbler v. Pachtman*, 424 U.S. 409, 422–23, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). Among such purposes are to allow prosecutors to focus their energies on prosecuting rather than defending lawsuits, *Burns*, 500 U.S. at 485, 111 S.Ct. 1934, to enable prosecutors to exercise independent judgment in deciding which suits to bring and in conducting them in court, *id.*, to ensure that triers of fact are not denied relevant evidence because of a prosecutor's fear of suit, *Imbler*, 424 U.S. at 426, 96 S.Ct. 984, and to enable judges to make rulings in favor of defendants knowing that such ruling will not subject prosecutors to liability, *id.* at 427, 96 S.Ct. 984. *Milstein*, 257 F.3d at 1007.

 However, the Supreme Court has held that such purposes are served by conferring absolute, as opposed to quali-fied, immunity on prosecutors only when they are engaged in prosecutorial or advocative functions and not when they are performing administrative or investigative functions. *See Kalina v. Fletcher*, 522 U.S. 118, 126–27, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997); *Buckley*, 509 U.S. at 269–73, 113 S.Ct. 2606; *Burns*, 500 U.S. at 494, 111 S.Ct. 1934. The Supreme Court has not established a precise test for distinguishing between advocative and nonadvocative functions but rather has identified a number of factors that are relevant to the determination. One factor is whether the conduct giving rise to the suit occurred in court. If so, it is presumptively advocative. However, if the conduct in question occurred out of court, it is presumptively non-advocative. Erwin Chemerinsky, *Prosecutorial Immunity*, 15 Touro L.Rev. 1643, 1653–54 (1999) (citing *Imbler, Burns, Buckley* and *Kalina* ). A second relevant factor is whether the conduct involved is usually performed by a prosecutor. If so, it is presumptively advocative. *Id.* (citing *Kalina* ). A third factor is the degree of choice the prosecutor had concerning whether or not to engage in the conduct. The less the conduct is a matter of prosecutorial choice, the more likely it is that the conduct is advocative. *Id.* (citing *Burns* and *Buckley* ).

 With the foregoing factors in mind, I turn to whether Donohoo is entitled to absolute immunity with respect to the claims against him. Plaintiff alleges that Donohoo committed several misdeeds, the first being that he conditioned negotiations with Zenner concerning a disposition of her case on Zenner's excluding Robins from the case. Plaintiff contends that Donohoo's demand caused Zenner to fire Robins and thereby deprive her of his valuable investigative services. Applying the factors discussed above, I conclude that when Donohoo demanded that Zenner

exclude Robins from the case, he was performing an advocative function. Although Donohoo made the demand out of court, he made it while he was engaged in negotiations with Zenner concerning the resolution of plaintiff's case. Engaging in settlement negotiations is a function that is virtually always performed by a prosecutor. Further, because it is often in the interests of justice to resolve cases through negotiation, it is necessary for prosecutors to engage in this practice. Thus, when prosecutors talk to defense lawyers about resolving cases, they are engaged in an advocative function and thus entitled to absolute immunity. *See Pinaud v. County of Suffolk,* 52 F.3d 1139, 1149 (2d Cir.1995) (stating that absolute immunity extends to claims of prosecutorial misconduct arising from plea-bargaining); *see also Mendenhall v. Goldsmith,* 59 F.3d 685, 691 (7th Cir.1995) (stating that absolute immunity covers a prosecutor's acts committed in the course of negotiating a settlement of a case). Therefore, Donohoo is absolutely immune from plaintiff's claim that he wrongfully conditioned plea negotiations on Robins's exclusion from the case.

██ Although plaintiff's second claim against Donohoo is not stated with precision, it may be discerned by reading the paragraphs of her complaint together. She alleges that "in the mid 1980's" state ballistics expert Lutz wrongfully destroyed exculpatory evidence, specifically "test-fired bullets of the alleged ballistics match with the gun used to convict." (Compl. ¶ 16.) She further states that, knowing such evidence had been destroyed, Donohoo, nevertheless, wrongfully "continued to misrepresent to Ms. Bembenek" that the evidence was available and that it placed the murder weapon in her hand. (*Id.*) Plaintiff apparently contends that the evidence to which Donohoo referred was, in fact, exculpatory because Lutz's tests and notes and/or the five pa-

thologists that Robins discussed it with concluded that it was. It is not clear from plaintiff's complaint exactly when or in what context Donohoo misrepresented that the state possessed incriminating evidence. She states only that he did so in the "pre-investigative and post-conviction phase of Ms. Bembenek's murder case." (*Id.* ¶ 25.)

As discussed, if Donohoo made the alleged false statements in the course of negotiating a resolution of plaintiff's case, he would have been performing an advocative function and would be absolutely immune from liability. However, plaintiff alleges that Lutz destroyed the exculpatory evidence in the mid–1980s, and negotiations did not commence until 1992 after completion of the John Doe investigation. She also alleges that Donohoo made the misrepresentations during different phases of her case and that he continued to make them. Drawing all inferences from the complaint in the light most favorable to plaintiff, it may be inferred that her claim is that Donohoo misrepresented the nature of the state's evidence prior to engaging in plea bargaining. If, in fact, Donohoo did make such misrepresentations outside the plea bargaining context, he may have done so while performing a non-advocative function. *See, e.g., Houston,* 978 F.2d at 368 (stating that when prosecutors discovered and suppressed exculpatory evidence in the post-conviction context, they were acting as investigators not advocates and were not entitled to absolute immunity). Because I cannot presently determine whether, when Donohoo allegedly misrepresented the state's evidence against plaintiff, he was engaged in an advocative function, I cannot conclude at this point that he is entitled to absolute immunity. Therefore, Donohoo's motion for judgment as to plaintiff's withholding of exculpatory evidence and misrepresentation claims on the ground of absolute immunity will be denied.

### 3. Lutz and Hanson

■ Defendants Lutz and Hanson claim that they are entitled to absolute immunity because they were witnesses at plaintiff's trial. Witnesses enjoy absolute immunity from civil liability on account of their testimony. *See Briscoe v. LaHue*, 460 U.S. 325, 345–46, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). That immunity also covers preparing to testify. *Buckley v. Fitzsimmons*, 919 F.2d 1230, 1245 (7th Cir.1990), *rev'd in part on other grounds* (after an intermediate remand), 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Witnesses are entitled to such immunity because subjecting them to § 1983 liability for their trial testimony "might undermine ... their contribution to the judicial process." *Juriss v. McGowan*, 957 F.2d 345, 349 (7th Cir.1992) (quoting *Briscoe*, 460 U.S. at 343, 103 S.Ct. 1108). Concern about being held liable for their testimony could discourage witnesses from coming forward to testify or cause them to distort their testimony. *Briscoe*, 460 U.S. at 333, 103 S.Ct. 1108.

■ However, where a plaintiff seeks damages from a former witness based on grounds other than the witness's trial testimony or preparation for testimony, the defendant is not entitled to absolute immunity. *Ineco v. City of Chicago*, 286 F.3d 994, 1000 (7th Cir.2002). For example, independent of his testimony, an expert "could violate a suspect's rights by 'cooking' a laboratory report in a way that misleads the testimonial experts." *Buckley*, 919 F.2d at 1245. Thus, experts "cannot hide behind [the immunity of] the officials whom they have defrauded." *Id.* (quoting *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir.1988)). Further, where an official actively withholds exculpatory information from a defendant and/or prosecutors, he places his conduct "outside of the safety of trial-based immunity." *Ineco*, 286 F.3d at 1000.

■ Thus, to the extent that plaintiff's claims against Lutz or Hanson are based on their trial testimony or preparation therefor, the claims are barred by absolute immunity. However, drawing all inferences in the light most favorable to plaintiff, she alleges that Lutz wrongfully withheld exculpatory information and notes from her both before and after trial and wrongfully destroyed exculpatory evidence after the trial. Such conduct was not testimonial, and therefore, as to these claims, Lutz is not entitled to absolute immunity. With respect to Hanson, plaintiff alleges that she falsified a micro-serology report by not including in it exculpatory evidence and that as a result, she misled the medical examiner, Elaine Samuels, and caused Samuels to present misleading incriminating testimony about plaintiff at the preliminary hearing. Plaintiff also alleges that Hanson wrongfully failed to disclose exculpatory evidence to her and possibly to the prosecutor. Based on *Buckley* and *Ineco*, I cannot conclude, at least at this stage of the proceeding, that such conduct is covered by absolute immunity.

For the reasons stated, I cannot grant judgment to Lutz and Hanson on plaintiff's non-testimonial claims against them based on absolute immunity.

### C. Statute of Limitations

■ Defendants contend that plaintiff's claims are barred by the statute of limitations. However, the statute of limitations is an affirmative defense, and a complaint states a claim whether or not a defense is potentially available. *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir.2004). For this reason, complaints need not contain *any* information about defenses and may not be dismissed based on such an omission. *Xechem, Inc. v. Bristol–Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir.2004). Thus, it is rarely ap-

propriate to dismiss a complaint based on a defendant's assertion that the statute of limitations has run. *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir.2004).

Although it is possible for a plaintiff to plead herself out of court, I cannot conclude on the basis of the pleadings in the present case that the statute of limitations has run. Federal law governs the question of when a § 1983 action accrues, and under federal law such action accrues when a plaintiff becomes aware of an injury and of its probable cause. *United States v. Kubrick*, 444 U.S. 111, 122, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). The reason that an action does not accrue until a plaintiff becomes or reasonably should become aware of its cause is because "the facts about causation may be in control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain." *Id.* In the present case, plaintiff alleges that although she was injured in 1992 when she pleaded guilty to second-degree murder, she did not discover its cause until 2003. Based on plaintiff's allegations, I cannot conclude that the limitation period commenced prior to 2003. If that is the case, then plaintiff's claim are not barred by the statute of limitations. Section 1983 has no statute of limitations and, accordingly, damage actions are governed by analogous state statutes of limitations. *Gonzalez v. Entress*, 133 F.3d 551, 554 (7th Cir.1998). Under Wisconsin law, the statute of limitations for a § 1983 claim is six years. *See Gray v. Lacke*, 885 F.2d 399, 407–09 (7th Cir.1989). Assuming that plaintiff's claim accrued in 2003, plaintiff commenced her action within six years.

Although I need not address the issue, I note that even assuming that the statute of limitations poses a problem for plaintiff, it is possible that the statute was tolled. State law governs the question of when a statute of limitations is tolled, *id.*, and Wisconsin recognizes the doctrine of equitable tolling, sometimes known as fraudulent concealment. *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1228–31 (7th Cir.1984). In the present case, plaintiff's allegation that defendants prevented her from accessing exculpatory information might conceivably be sufficient to trigger such doctrine.

For the foregoing reasons, I cannot conclude at this point that plaintiff's action is barred by the statute of limitations.

## IV. DISCUSSION OF MOTION FOR STAY

Alternatively, based on various abstention doctrines, defendants ask me to stay further proceedings in the present case pending the outcome of the § 974.07 motion brought by plaintiff in state court.

### A. Plaintiff's State Court Motion

As previously indicated, in 2002 plaintiff brought a motion in Milwaukee County Circuit Court pursuant to newly enacted under § 947.07. Section 947.07 permits persons who have been convicted of a crime to seek DNA testing of evidence in the government's possession and authorizes courts to order such testing if the applicant satisfies various conditions, including showing that a favorable test result would likely change the outcome of the case. If a court orders such testing and the test results support the movant's claim of innocence, the statute authorizes courts to grant appropriate relief. *See* Keith A. Findley, "New Laws Reflect the Power & Potential of DNA," *Wisconsin Lawyer*, (May 2002) at 20; *see also* Keith A. Findley, "Re-imagining Justice," *The Wisconsin Defender*, Winter 2004 at 11. In her somewhat unwieldy state court motion,[4] plaintiff alleged that based on evi-

---

4. Plaintiffs state court submissions and relat-
ed documents are attached to defendants' mo-

dence that she had tested, it was reasonably probable that Christine Schultz was the victim of a sexual assault/homicide, and she asked the court to order DNA testing of certain evidence in the state's possession. The state opposed plaintiff's motion, arguing that the evidence on which she relied—the existence of male DNA on a 1981 vaginal swab of the victim—was the result of contamination by a male who handled the sample sometime in the last twenty years.

The circuit court held a hearing and found that:

> [T]he male DNA found on the vaginal swab does not convince this court that there is a reasonable probability the petitioner would not have been convicted for the Christine Schultz homicide if this evidence had been available before her trial. Since the DNA evidence presented by the petitioner has not convinced this court that Christine Schultz was the victim of a sexual assault homicide, the related ballistics testing is now unnecessary. Additionally, since any opinion of a forensic expert would be based on DNA evidence, there is no need for this court to hear such testimony.

(Ex. 1006, Circuit Ct. Decision at 5.) Plaintiff appealed the circuit court's decision, and the appeal is pending.

## B. Abstention

The Supreme Court has identified certain circumstances in which federal courts must abstain and refuse to decide cases that are properly within their jurisdiction. In the present case, defendants argue that three different abstention doctrines are applicable. I discuss each of defendants' arguments in turn.

### 1. *Colorado River* Abstention

Under the *Colorado River* doctrine, a district court may stay a suit in exceptional circumstances where a concurrent state proceeding is pending, and the stay would promote "wise judicial administration." *Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir.2004) (quoting *Colo. River Water Cons. Dist. v. United States*, 424 U.S. 800, 818, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). In addressing a request for *Colorado River* abstention, I start with the premise that I should exercise jurisdiction and then determine whether exceptional circumstances exist to justify surrendering jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). This is so because federal courts have a "virtually unflagging obligation" to exercise the jurisdiction granted to them by federal statutes. *AAR Int'l, Inc. v. Nimelia's Enters. S.A.*, 250 F.3d 510, 517 (7th Cir.2001) (quoting *Colo. River Water Cons.Dist.*, 424 U.S. at 817, 96 S.Ct. 1236). Thus, abstention is the exception not the rule. *Clark*, 376 F.3d at 685.

In applying the *Colorado River* doctrine, a court conducts a two-part analysis. First, it determines "whether the concurrent state and federal actions are actually parallel." *Id.* (quoting *LaDuke v. Burlington N. Railroad Co.*, 879 F.2d 1556, 1558 (7th Cir.1989)). If the actions are parallel, the court must then consider a number of non-exclusive factors that might demonstrate the existence of "exceptional circumstances." *Id.* Such factors include:

> (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desir-

---

tion as Exhibits 1004, 1005 and 1006. These documents are public records, and thus I may take judicial notice of them pursuant to Fed. R.Civ.P. 201(b) without converting defen-

dants' motion into one for summary judgment. *See Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir.1998).

ability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.

*Id.*

■ Suits are parallel if "substantially the same parties are litigating substantially the same issues simultaneously in two fora." *AAR Int'l, Inc.*, 250 F.3d at 518 (quoting *Schneider National Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir. 1990)). Suits need not be identical to be parallel, *id.* (citing *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir.1990)), and the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel. *Id.* The question is not whether the suits are formally symmetrical, but whether there is a "substantial likelihood" that the non-federal litigation "will dispose of all claims presented in the federal case." *Id.* (quoting *Day v. Union Mines, Inc.*, 862 F.2d 652, 656 (7th Cir.1988)) (in turn quoting *Lumen Constr., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 695 (7th Cir.1985)). If the court has any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of issues between the parties in the federal court action, it should not abstain under *Colorado River. Id.* at 517–20.

■ In the present case, the state and federal proceedings are not parallel. In state court, plaintiff is appealing an unsuccessful post-conviction motion for DNA testing, while in her federal § 1983 action she seeks damages from three individuals who allegedly violated her constitutional rights by denying her access to exculpatory evidence. The two proceedings do not involve substantially the same parties litigating substantially the same issues. The defendants in the present case are not parties to the state court motion, and the state, which is a party to plaintiff's state court motion, is not a party in the present case. More importantly, resolution of plaintiff's state court motion will not dispose of her federal claims. Whether or not a state court orders DNA testing will not determine whether the federal defendants violated plaintiff's constitutional rights. Thus, I will decline to stay plaintiff's federal action based on the *Colorado River* doctrine.

## 2. *Younger* Abstention

■ In *Younger v. Harris*, 401 U.S. 37, 53, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court held that absent extraordinary circumstances, federal courts should abstain from enjoining ongoing state criminal proceedings. In *Younger*, a state criminal defendant filed a federal complaint alleging that the statute underlying his state prosecution violated the Constitution and asking that its enforcement be enjoined. In doing so, he attempted to escape the state system and reframe the issues on his own terms in federal court, converting what would ordinarily be a defense to criminal prosecution into an affirmative claim for relief. The Supreme Court held that under these circumstances the federal court should abstain from hearing the case based on principles of equity, comity and federalism. *Id.* at 43–44, 91 S.Ct. 746. The *Younger* decision was very much grounded in the basic equity doctrine that courts should not enjoin ongoing criminal prosecutions when the moving party has an adequate remedy at law and will not suffer irreparable harm, and in the manifest importance of the states' role in

the enforcement of criminal laws. *Id.; Special Souvenirs, Inc. v. Town of Wayne,* 56 F.Supp.2d 1062, 1071 (E.D.Wis.1999).

 Over time, a test has emerged for determining whether a federal court is required to abstain under *Younger:* (1) the state proceedings must be judicial in nature and must be ongoing; (2) the proceedings must implicate important state interests; (3) the proceedings must afford an adequate opportunity to raise constitutional challenges; and (4) no extraordinary circumstances exist that would make abstention inappropriate. *Green v. Benden,* 281 F.3d 661, 666 (7th Cir.2002) (citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)). However, before applying the above test, a court must determine whether the federal relief sought would in fact interfere in some manner in the state court litigation. *Green v. City of Tucson,* 255 F.3d 1086, 1094 (9th Cir.2001); *see also Rogers v. Desiderio,* 58 F.3d 299, 301 (7th Cir.1995) (stating that *Younger* abstention is "designed to prevent interference with proceedings presenting important issues of state policy or power"). If the federal action is unlikely to interfere with the state proceeding, abstention serves no useful purpose. Thus, *Younger* will apply most often in circumstances in which the state court proceeding is an enforcement action against the federal court plaintiff, and the federal action seeks to enjoin, declare invalid or otherwise involve the federal courts in terminating or truncating the state proceeding. *Green,* 255 F.3d at 1098.

 In the present case, defendants fail to satisfy several of the requirements for *Younger* abstention. First, plaintiff's federal action will not interfere with the proceeding in state court. Plaintiff's § 1983 action will not interfere with whether a state court grants or denies

plaintiff's request for DNA testing or with whether it grants or denies relief in the event that it orders testing and the testing exonerates plaintiff. Second, neither plaintiff's application for DNA testing nor her appeal of the denial of such request raises an important issue of state policy or power. *See Rogers,* 58 F.3d at 301 (stating that *Younger* abstention is designed to prevent interference with state proceedings presenting important issues of state policy or power). Third, the state proceeding does not afford plaintiff an adequate opportunity to raise the constitutional claims that she asserts in her § 1983 action. Section 947.07, on which plaintiff's state court motion is based, authorizes parties to obtain DNA testing upon the satisfaction of certain conditions, but does not permit them to raise federal constitutional claims or obtain damages for the violation of federal constitutional rights. Thus, I will decline to abstain under *Younger.*

### 3. *Pullman* Abstention

 *Pullman* abstention takes its name from *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *Pullman* abstention is required when a state law is uncertain, and a state court's clarification of it might make a federal court's constitutional ruling unnecessary. Under such circumstances, the federal court should send the state law question to the state court for determination before resolving the federal constitutional question. *See* Erwin Chemerinsky, *Federal Jurisdiction* 763 (4th ed.2003). The main purpose of *Pullman* abstention is to avoid, if possible, a federal court's having to declare a state statute unconstitutional before giving the state courts a chance to interpret it narrowly. *Mazanec v. N. Judson–San Pierre Sch. Corp.,* 763 F.2d 845, 847 (7th Cir.1985) (citing *Zwickler v. Koota,* 389 U.S. 241, 251 n. 14, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); *Haw.*

*Hous. Auth. v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984)). Thus, for a federal court to abstain under *Pullman,* the Seventh Circuit requires that two elements be present: (1) some risk that a state statute will be found unconstitutional unless narrowed, and (2) some reasonable chance that the statute can be narrowed through interpretation. *Id.* at 847.

■ In the present case, defendants fail to satisfy either of the prerequisites for *Pullman* abstention. Neither party suggests that there is any likelihood that § 947.07 or any other state statute related to plaintiff's federal claims is likely to be found unconstitutional unless narrowed. Further, neither party has suggested that § 947.07 can be narrowed. In sum, there is no basis in the present case for *Pullman* abstention, and, accordingly, I will decline to abstain on this ground.

## V. CONCLUSION

For the reasons stated,

**IT IS ORDERED** that defendants' motion to dismiss is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' alternative motion for a stay is also **DENIED**.

**FINALLY, IT IS ORDERED** that a telephone conference to schedule further proceedings will be held on **February 9, 2005 at 10:30 a.m.** The court will initiate the call.